FULTON NATIONAL BANK *vs.* DANIEL P. GOSLINE.

Suffolk.    January 20, 1897. — February 27, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Promissory Note — Action — Finding.*

If a promissory note is discounted by a bank for the payee before maturity without any knowledge that the maker of the note has any defence to it as against the payee, to whose credit in his account with the bank the proceeds are passed, in an action on the note by the bank against the maker, evidence that the payee " ceased to be a depositor " in the bank on a date before the maturity of the note will justify the inference that at that time he closed his account with the bank, and a finding for the plaintiff is warranted.

CONTRACT, upon a promissory note for $335.66, dated August 8, 1894, payable in four months after date to the order of D. H. Kulp, signed by the defendant, and indorsed by Kulp to the

plaintiff. The answer, among other defences, alleged that the note was signed and delivered to Kulp for his accommodation, and with the understanding that, if certain goods held by the defendant should be returned to Kulp, the latter would renew or pay the note when due; that the goods were returned by the defendant to Kulp before the note became due; that, if Kulp indorsed and delivered the note to the plaintiff, it was done after maturity, and if indorsed before maturity it was so indorsed and delivered without consideration; and that the note was fraudulently put into circulation by Kulp, and the plaintiff did not take it without notice of the fraud.

Trial in the Superior Court, without a jury, before *Richardson*, J., who allowed a bill of exceptions, in substance as follows.

John C. Carter, a witness called by the plaintiff, testified that he was the cashier of the plaintiff bank; that the note in suit was indorsed by Kulp in his presence, and was then delivered to the bank, through the witness, for discount, and was discounted; that the proceeds were passed to the credit of Kulp in his account with the bank; that he did not know anything of the relations between the defendant and Kulp other than what was shown by the note; that Kulp had been a depositor in the plaintiff bank for over seven years, and had had other notes discounted there; that the note in suit was discounted on August 10, 1894; that Kulp ceased to be a depositor in the plaintiff bank in the early part of October, 1894; and that he became financially embarrassed, and confessed judgment on October 6, 1894.

The defendant testified that he was doing business in Boston, and had dealings with Kulp, which began in 1893, under a contract between them; that he bought of Kulp a particular kind of goods which the latter manufactured; and that the note in suit was given in accordance with a contract which he had made with Kulp in 1894. His examination was continued as follows:

"*Q.* State what this particular note was, why it was given, and what it was for? *A.* It was given in consideration of goods shipped me and goods we had disposed of, etc., an account which was being — . . .

"*Q.* That note, was it given for goods? *A.* It was. The goods were on our premises, and a certain amount remained there.

"*Q.* For what purpose was that note given? *A.* Simply because he asked for an accommodation note amounting to about that much.

"*Q.* What was the understanding between you on the giving of this particular note? *A.* That it should be renewed or paid as the goods were sold.

"*Q.* Were those goods sold? *A.* There were goods sold; yes, sir.

"*Q.* The goods for which this $335 note was given? *A.* I cannot say whether they were or not. That is to say, I don't know the condition of the account.

"*Q.* Were any of them subsequently returned? *A.* Certainly, there was a lot of goods returned.

"*Q.* Have you any account of the goods returned? *A.* We have a credit from them on the goods returned.

"*Q.* All I want to get at is to state for what purpose it was given? *A.* It was given as an accommodation note.

"*Q.* What was to be done by him when that became due, or what was to be done by him before it became due? *A.* It was supposed to be used as the contract stated. . . .

"*Q.* Now under what conditions were goods sent to you, and how were they paid for, if at all? *A.* Under the conditions of these contracts. The contracts were adhered to in every particular until this note became due, other notes being given, and Mr. Kulp paying part of them, or some portion of them, until this came due, and I have his letter where he agreed to pay this note. . . .

"*Q.* Had you given other accommodation notes? *A.* Four or five others.

"*Q.* Whether or not these notes were renewed? *A.* They were in whole or in part. . . .

"*Q.* Now, if you will answer my question, which I will put again, while I am getting at some of these letters, — if you will answer for what purpose this note was given? *A.* It was given at the request of Mr. Kulp for his accommodation.

"*Q.* Was there anything with reference to any goods to be

returned by you, and if so, what was the result to be? *A.* There was a certain number of goods on hand at the place, and the arrangement was that they would be finally accounted for.

"*Q.* Did you return them? *A.* We did.

"*Q.* When did you return the goods? *A.* Some time in the latter part of August, 1894, I think. . . .

"*Q.* Now, if these goods were returned after the giving of that note, what was to be the result, so far as that note was concerned, which was given in August, 1894? *A.* Mr. Kulp was to take up the note on receipt of the goods, or when it became due. . . .

"*Q.* Did he ever take up this note? *A.* He did not.

"*Q.* The amount of goods which were returned shows on your account? *A.* It does.

"*Q.* Whether or not you were to pay anything at all upon that note provided the goods were returned? *A.* The difference between the note and the amount of goods was to be settled by whichever side the balance showed.

"*Q.* Can you say whether there was a balance in your favor or a balance in his favor, so far as that note is concerned, after the goods were returned? *A.* By my recollection of it, it is about an even sum, somewhere about an even sum of money.

"*Q.* It shows on your books? *A.* Yes, sir."

John C. Carter, recalled, testified that at the time that he received this note, or at any other time, he did not know anything about any agreements between Kulp and the defendant; and that the note was taken in the ordinary course of business.

The defendant "orally asked the court to find that the note was fraudulently put in circulation by Kulp, the plaintiff being bound to prove by a preponderance of the evidence that it obtained it in good faith and without notice of Kulp's fraud; that the plaintiff has not sustained the burden on the evidence; that even if the plaintiff bank obtained the note in good faith, and merely discounted it for the indorser and credited it on his account, it did not thereby pay for it, or part with anything, and therefore the plaintiff bank cannot recover on this evidence."

This the judge declined to do, and found for the plaintiff; and the defendant alleged exceptions.

*W. J. Miller*, for the defendant.

*J. M. Lesser & E. A. McLaughlin*, for the plaintiff.

FIELD, C. J.   We think that it was competent for the court to find, from the evidence, that the plaintiff took the note before maturity for value, without notice or knowledge of any fraud on the part of the payee in discounting it, or of any defence which the maker of the note had against the payee.   Besides, from the inconsistent character of the different parts of the defendant's testimony, the court might well have found that the note was given for a valuable consideration, and that there had been no failure of consideration.   Although there was evidence that the note was discounted for the payee by the plaintiff before maturity without any knowledge that the maker of the note had any defence to it as against the payee, and although the proceeds were passed to the credit of the payee in his account, yet the defendant contends that there was no evidence that these proceeds ever had been drawn out by the payee.   Whether merely discounting the note for Kulp, and crediting the proceeds in his account, are sufficient to constitute the bank a purchaser for value, we need not decide.   The note is dated August 8, 1894, and was payable four months after date, and was discounted by the bank on August 10, 1894.   The cashier testified that the payee of the note "ceased to be a depositor" in the bank in the early part of October, 1894.   From this testimony the court could infer that at that time the payee closed his account with the bank.

*Exceptions overruled.*